# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**JEREMY K. NIX**
**CASEY C. MORGAN**
Matheny Hahn Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHNATHON R. ASLINGER,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellant-Defendant,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 35A02-1303-CR-296
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF INDIANA,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellee-Plaintiff.⠀⠀⠀⠀⠀⠀)

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey R. Heffelfinger, Judge
Cause No. 35D01-1206-FD-127 & 35D01-1207-FA-152

**January 23, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

This consolidated appeal stems from two separate, but closely-related, proceedings conducted in Huntington County, Indiana. Appellant-Defendant, Johnathon R. Aslinger (Aslinger), appeals his convictions and sentences for possession of methamphetamine, a Class D felony, Ind. Code § 35-48-4-6.1, and possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a) (Case #127); and dealing in methamphetamine, a Class A felony, I.C. § 35-48-4-1.1 (Case #152).

We affirm in part, reverse in part, and remand.

## ISSUES

Aslinger raises five issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion in admitting evidence purportedly seized in violation of the Fourth Amendment;

(2) Whether the trial court abused its discretion in denying Aslinger an opportunity to make an offer of proof;

(3) Whether the trial court abused its discretion in sentencing Aslinger to consecutive habitual substance offender sentence enhancements;

(4) Whether the trial court abused its discretion in refusing to tender Aslinger's jury instruction; and

(5) Whether Aslinger's sentence is inappropriate in light of the nature of the offense and character of the offender.

## FACTS AND PROCEDURAL HISTORY

2

On June 19, 2012, shortly before midnight, Huntington Police Officer Alan Foster (Officer Foster) responded to a dispatch of two juvenile males breaking into vehicles. Upon arriving at the location, Officer Foster observed two males who fit the description provided in the dispatch, Aslinger and Geoffrey Fugate (Fugate), standing near the street. As Officer Foster approached, Aslinger and Fugate began walking away, and Officer Foster saw Aslinger place some items in Fugate's backpack. Officer Foster asked Aslinger and Fugate to stop and talk to him, but they continued walking. After Officer Foster's second request, announcing himself as the K-9 Unit, Aslinger and Fugate obeyed. After verifying the men's identifications, Officer Foster detected a "rolled cigarette/joint" tucked behind Aslinger's ear. (Tr. #127 p. 91). When questioned, Aslinger explained that "it was a rolled joint of B2."[1] (Appellant's #127 App. p. 17). Officer Foster then examined the hand-rolled cigarette. Based on its aroma, Officer Foster believed it to be marijuana, which he verified with a field test.

While discussing the results of the field test with Aslinger, who maintained that the substance was B-2, Officer Foster noticed a silver knife in Aslinger's pocket and requested that Aslinger remove everything from his pockets.[2] By this time, Officer Karl Shockome had arrived to assist Officer Foster. In addition to the knife, the Officers removed a glass pipe, a yellow pen barrel, and an electronic scale from Aslinger's pockets. Officer Foster performed a pat-down on Aslinger and felt "a long slender bulge" in his pocket, which

---

[1] B-2, also commonly known as spice, "is a synthetic drug . . . that is supposed to represent the same euphoria feeling of 'high' as marijuana." (Tr. #127 p. 91). Depending on its formulation, it may be legal.
[2] The details of the pat-down vary between Officer Foster's police report from the night of the incident and his testimony at trial. Thus, it is unclear to what extent Officer Foster ordered Aslinger to empty his own pockets versus the extent to which Officer Foster actually felt and removed the items.

3

Officer Foster removed to reveal a "pipe that is used for smoking marijuana." (Tr. #127 p. 94). Officer Foster "then handcuffed [Aslinger] for our safety and his. We checked the watch pocket and found two plastic bags with a white powder." (Appellant's #127 App. p. 17). A field test confirmed the white powder was methamphetamine.

At this time, Officer Foster requested the dispatch officer to communicate with the witnesses who had reported the break-ins, and who were observing Officer Foster's encounter with Aslinger and Fugate from their window. The dispatch officer informed Officer Foster that they were not the two men spotted breaking into cars. Officer Foster, having been denied permission to search the backpack, told Fugate he was free to leave. Aslinger, however, was placed under arrest.

The following day, June 20, 2012, the State filed an Information charging Aslinger with Count I, possession of methamphetamine, a Class D felony, I.C. § 35-48-4-6.1; Count II, possession of marijuana, a Class D felony, I.C. § 35-48-4-11; and Count III, possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(b). The State also filed a separate Information to charge Aslinger as a habitual substance offender (HSO) based on two convictions in 2010 for Class A misdemeanor substance offenses: operating while intoxicated (OWI) and possession of marijuana. Aslinger was subsequently released on bond.

Exactly one month after his arrest—while out on bond—during the late-night/early-morning hours of July 18-19, 2012, Aslinger and three friends—Aaron Downey (Downey), Trista Thornsberry (Thornsberry), and Tria Loshe (Loshe)—spent a few hours driving around country roads in Huntington County. As they drove, Aslinger and Downey used a

4

plastic bottle to start cooking a batch of methamphetamine. The group eventually drove to Christie Davis' home at 344 Swan Street in Huntington, which is located approximately 250 feet from Laurie Park. Once there, Aslinger and Downey finished preparing the methamphetamine, which they and the others then injected intravenously and smoked multiple times over the next several hours.

Around mid-morning on July 19, Aslinger and Thornsberry left Davis' house on foot. An argument ensued, and, because their walk along the railroad tracks led them directly to the backside of the Huntington County jail, it did not take long for their screaming to capture police attention. Police officers investigated the disturbance and quickly suspected that Aslinger and Thornsberry "were under the influence of something." (Tr. #152 p. 107). In the midst of her yelling and erratic behavior, Thornsberry revealed that she was currently on probation, prompting the police officers to take her into custody. At that time, because of his compliance with the officers, Aslinger was permitted to leave. Later that evening, following an interview with Thornsberry, the police officers obtained and executed a search warrant at the Swan Street house where they found evidence of a methamphetamine lab. Downey, Loshe, and Davis—who were all still at the Swan Street house when the warrant was executed—were taken into custody and interviewed.

The next day, July 20, 2012, the State filed an Information, charging Aslinger with one Count of dealing in methamphetamine, a Class A felony, I.C. § 35-48-4-1.1. Specifically, the Information alleged that Aslinger "knowingly manufactured methamphetamine . . . within one thousand (1,000) feet of a public park." (Appellant's

5

#152 App. p. 9). On September 24, 2012, the State filed a second Information and charged Aslinger as an HSO for his prior OWI and marijuana possession convictions.

On February 6 through February 8, 2013, a bifurcated jury trial was held for Case #152. At the close of the evidence, the jury returned a guilty verdict for dealing in methamphetamine. Thereafter, Aslinger admitted to having two prior substance convictions and entered a guilty plea to the HSO charge. On February 21, 2013, a bifurcated jury trial was conducted for Case #127. The jury returned a verdict of guilty as to possession of methamphetamine and paraphernalia, but found Aslinger not guilty of marijuana possession. Following the verdict, the jury heard additional evidence and found Aslinger guilty of being an HSO.

On March 12, 2013, the trial court conducted a sentencing hearing for both Case #127 and Case #152. The trial court first sentenced Aslinger for his conviction in Case #152, imposing a thirty-two-year sentence for dealing in methamphetamine, enhanced by five years for the HSO adjudication, for a total of thirty-seven years. For Case #127, the trial court sentenced Aslinger to serve one-and-a-half years for methamphetamine possession, enhanced by five-and-a-half years for the HSO adjudication. The trial court also ordered a concurrent one-year sentence for possession of paraphernalia, for a total term of seven years. The trial court ordered the sentences for Case #127 and Case #152 be served consecutively, resulting in an aggregate sentence of forty-four-years.

Aslinger now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. <em>Case #127</em>

6

Aslinger was convicted of possession of methamphetamine, a Class D felony, I.C. § 35-48-4-6.1, and possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a). He now challenges that: (A) evidence was improperly admitted after being seized in violation of the Fourth Amendment; (B) he was denied the opportunity to make an offer of proof; and (C) his HSO sentence enhancement is unauthorized by Indiana law.

## A. *Search and Seizure*

First, Aslinger claims the trial court abused its discretion in admitting evidence seized in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, provides citizens with the right to be free from "unreasonable searches and seizures." U.S. CONST. AMEND. IV. Where a search is conducted in the absence of a warrant, the State must prove there was a valid exception. *Moore v. State*, 827 N.E.2d 631, 638 (Ind. Ct. App. 2005), *trans. denied*. Whether a warrantless search and seizure violates the Fourth Amendment "depends upon the facts and circumstances of each case[,]" and evidence obtained from an invalid seizure is inadmissible pursuant to the United States Supreme Court's "exclusionary rule." *Id.* at 636-38. A trial court generally has broad discretion over evidence admissibility, and our court will reverse only for an abuse of discretion. *Francis v. State*, 764 N.E.2d 641, 643-44 (Ind. Ct. App. 2002). We will not reweigh evidence, will consider conflicting evidence in a light most favorable to the trial court's ruling and uncontested evidence in the defendant's favor. *Id.* Notwithstanding our deference to the trial court's evidentiary decisions, we review determinations of an officer's reasonable

7

suspicion to conduct an investigatory stop *de novo*. *Harper v. State*, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), *trans. denied*.

Aslinger asserts that evidence was improperly seized because "the reasonable suspicion which gives authority to [an officer to conduct] a *Terry* stop does not authorize the examination of the contents of items carried by the suspicious person." (Appellant's #127 Br. p. 7). A police officer may briefly detain "a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). During a *Terry* stop, an officer is justified in asking a few questions and, if the situation calls for it, frisking the suspect for weapons. *See Edmond v. State*, 951 N.E.2d 585, 588 (Ind. Ct. App. 2011). In this case, Aslinger does not contest that the original purpose for Officer Foster to make a *Terry* stop was reasonable based on the dispatch that "two [male] juveniles in the area of Wright Street and Salamonie Avenue were . . . breaking into cars." (Tr. #127 p. 86). Instead, Aslinger challenges that Officer Foster's investigation to matters beyond the vehicle break-ins exceeded the investigation permissible without a warrant. Conversely, the State contends that the Officer's observation of the hand-rolled cigarette provided the Officer with reasonable suspicion to detain Aslinger and investigate further.[3]

---

[3] The State initially claims that Aslinger waived his Fourth Amendment claim for appellate review by failing to object when the State admitted the physical evidence at trial, which "is required to preserve the issue for appeal." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). Our court may review a waived claim if "a fundamental error occurred." *Id.* In this case, we need not engage in a fundamental error analysis. Immediately prior to the introduction of the physical evidence collected by Officer Foster, Aslinger objected to the Officer's search "and anything after this point" as a violation of *Terry v. Ohio*, 392 U.S. 1 (1968), which was overruled. (Tr. #127 p. 90). We thus find this issue is not waived.

Our nation's courts have long held that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Finger v. State*, 799 N.E.2d 528, 534 (Ind. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Here, when Officer Foster arrived on the scene, he saw two males whose ages he could not readily identify. Upon the Officer's request, Aslinger and Fugate provided their identification cards, which would have verified the men were not juveniles, and, although it is unclear at what point he called the dispatch officer to contact the witnesses, Officer Foster did receive confirmation that Aslinger and Fugate were not the two suspected of the vehicle break-ins. Furthermore, other than his observation that Aslinger had placed something into Fugate's bag, which was not questioned, Officer Foster noted no other conduct to sustain a suspicion that Aslinger was involved in the break-ins. *See Jamerson v. State*, 870 N.E.2d 1051, 1058 (Ind. Ct. App. 2007). Once the purpose of an investigatory stop has been satisfied, a police officer is not justified in extending the investigation. *See Holly v. State*, 918 N.E.2d 323, 326 (Ind. 2009).

Despite the purposes of the stop being seemingly satisfied, Officer Foster nonetheless continued the *Terry* stop with an investigation of the hand-rolled cigarette and a thorough search of Aslinger's pockets. As to the seizure of the cigarette, Aslinger claims that Officer Foster exceeded the scope of his authority because "[t]he illegality of the rolled cigarette was not readily apparent to Officer Foster." (Appellant's #127 Br. p. 7). Under the plain view doctrine, a police officer who is lawfully in a particular place may seize an item inadvertently discovered, so long as its incriminating nature is "readily apparent." *Lance v. State*, 425 N.E.2d 77, 78 (Ind. 1981). When Officer Foster observed the rolled

9

cigarette in plain view behind Aslinger's ear, the Officer was permissibly on a public street. However, a hand-rolled cigarette is not per se illegal. Based on the Officer's testimony, it is clear that it was not "immediately apparent or instantaneously ascertainable" to Officer Foster whether the hand-rolled cigarette contained an illicit substance, and merely suspecting that an item is unlawful is not sufficient to conduct a warrantless seizure. *Corwin v. State*, 962 N.E.2d 118, 122 (Ind. Ct. App. 2011) (discussing plain feel doctrine), *trans. denied*. Officer Foster reported nothing to merit suspicion that Aslinger had drugs tucked behind his ear, and to even suspect the cigarette was marijuana, Officer Foster had to take it, sniff it, and look inside it to see "green plant material." (Appellant's #127 App. p. 17).

With respect to the seizure of paraphernalia, Officer Foster, "without more," was not permitted by *Terry* or the plain view doctrine to investigate "the contents of the items" in Aslinger's pockets. *Corwin*, 962 N.E.2d at 122. That said, during a permissible *Terry* stop, if the police officer has "a reasonable fear of danger," the officer may "conduct a carefully limited search of the [suspect's] outer clothing" for the distinct purpose of locating weapons. *Johnson v. State*, 710 N.E.2d 925, 928 (Ind. Ct. App. 1999). Officer Foster's view of the knife in Aslinger's pocket certainly gives rise to a reasonable concern for officer safety. Officer Foster testified that after he removed the knife from Aslinger's pocket and placed it in the police car, he observed another "long slender bulge" in Aslinger's pocket (Tr. #127 p. 94). Believing it could be another knife or weapon, Officer Foster also removed what turned out to be a pipe for smoking marijuana. Because one

10

weapon had already been removed from Aslinger's possession, we find Officer Foster was reasonable to believe the knife-shaped pipe may have been a second weapon.

While the removal of the pipe is permissible under a valid *Terry* stop, it is well-established that an officer's justification to conduct a pat-down for weapons is limited to just that; it is not an invitation "to discover evidence of a crime." *Johnson*, 710 N.E.2d at 928. In this case, Officer Foster testified that also he searched the rest of Aslinger's pockets and removed another pipe, a square scale, and a pen barrel, as well as two plastic bags filled with white powder from the watch pocket. Officer Foster did not state that he believed these were weapons, and it is insufficient in a pat-down that he "merely suspected" feeling paraphernalia or narcotics. *Parker v. State*, 697 N.E.2d 1265, 1268 (Ind. Ct. App. 1998). To justify removing this contraband from Aslinger's pockets, its identity must have been "immediately apparent or instantaneously ascertainable." *Id.*

The State's alternative argument that no warrant was required focuses on the fact that the items from Aslinger's pockets were seized pursuant to a valid search incident to arrest. Because Officer Foster detected the odor of marijuana, the State contends he had probable cause to arrest Aslinger and conduct a subsequent search. The State references cases such as *Edmond*, 951 N.E.2d at 585, and *Miller v. State*, 846 N.E.2d 1077 (Ind. Ct. App. 2006), for the proposition that "the distinctive odor of marijuana . . . yields probable cause that the person possesses marijuana." (Appellee's Br. pp. 19-20). The present case is distinct, however, because there was no scent of marijuana emanating from Aslinger's person or vehicle. The State avers that "Officer Foster not only smelled marijuana but localized the smell's source to a particular object, the rolled 'joint' cigarette that was on

11

Aslinger's person." (Appellee's Br. p. 20). The State is mistaken in its sequence of events; in fact, Officer Foster had to physically take the cigarette from Aslinger and *then* sniff it to detect any odor. Accordingly, because the seizure of the hand-rolled cigarette was unrelated to the purpose justifying the *Terry* stop and not subject to seizure under the plain view doctrine, Officer Foster did not have probable cause to make an arrest and conduct an incidental search. We find the trial court abused its discretion in admitting the marijuana joint, methamphetamine, and paraphernalia (with the exception of the second pipe, which was thought to have been a knife) because no warrant or warrant exception authorized their seizure.[4]

## B. *Offer of Proof*

Next, Aslinger claims that the trial court abused its discretion by denying him the opportunity to make an offer of proof to "show[] facts and circumstances for the underlying offenses which would justify a jury in not determining that Aslinger was [an HSO]." (Appellant's #127 Br. p. 9). An "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Ind. Evidence Rule 103(a)(2). "An offer of proof should show the facts sought to be proved, the relevance of that evidence, and the answer to any objection to exclusion of the evidence." *State v. Wilson*, 836 N.E.2d 407, 410 (Ind. 2005). An offer of proof assists

---

[4] Because the second pipe remains admissible, Aslinger's conviction for possession of paraphernalia *may* be upheld on remand. As a third substance offense, unrelated to his prior convictions for marijuana possession or OWI, a conviction for paraphernalia possession would merit the HSO enhancement. Therefore, we address Aslinger's claims of error regarding his offer of proof and consecutive sentences because they pertain to the HSO enhancement.

the trial court in ruling on an evidentiary objection and "preserve[s] for appeal the trial court's allegedly erroneous exclusion of evidence." *Duso v. State*, 866 N.E.2d 321, 324 (Ind. Ct. App. 2007). We review this issue for harmless error. *See id.*

During the HSO phase of the trial, Aslinger attempted to testify about his prior substance offense convictions:

| | |
|---|---|
| DEFENSE COUNSEL: | All right [Aslinger], let's start with talking about the OWI charge. Were you pulled over [on August 2, 2008]? |
| ASLINGER: | No I was not. |
| DEFENSE COUNSEL: | How did the police come to charge you with that crime? What happened? |
| STATE: | I'm going to object to this on relevance. |
| TRIAL COURT: | Sustained. |

(Tr. #127 p. 181). Aslinger continued, stating he pled guilty to the OWI and marijuana possession charges. Immediately thereafter, closing statements and final instructions were provided, and the case was given to the jury. *After* the jury began deliberating, Aslinger requested to make an offer of proof regarding the excluded OWI testimony:

| | |
|---|---|
| TRIAL COURT: | You can just go ahead and make it on here. I don't need to be in here for you to make your, uh . . . whatever proof that you were going to offer. |
| DEFENSE COUNSEL: | Well, we were going to recall him to the stand and go through those questions where he was stopped. I mean, it will take just a couple minutes but it's a matter of preserving the record. |
| TRIAL COURT: | No, I'm not going to allow it. |

(Tr. #127 p. 188 (alteration in original)). Although the trial judge was not in the courtroom, Aslinger made his offer of proof by testifying that, in 2010, his attorney had advised him to plead guilty despite the fact that, on the night of the OWI, there was an accident but

police neither saw him driving nor pulled him over, and at the time he was arrested for marijuana possession, he did not possess marijuana—just a pipe.

Aslinger claims that the trial court erred by refusing to be present to hear the offer of proof to be able to reconsider its ruling. The State counter-argues that there was no need for the trial judge to be present for the offer of proof because the jury had already commenced deliberations, so it was too late for the trial court to reconsider. Furthermore, the State asserts that the trial court did not err because Aslinger was permitted to make an offer of proof on the record for the sake of appeal. We agree. Our court has previously established that in order to preserve an evidentiary error, the party must make "[a] specific and timely objection and offer of proof." *Kellett v. State*, 716 N.E.2d 975 (Ind. Ct. App. 1999). Here, Aslinger clearly failed to make his offer of proof in a *timely* manner. He had an opportunity following the State's objection, but, instead, he finished his testimony and made a closing argument without mentioning the offer of proof. Once the jury began deliberating, Aslinger could hardly expect that the trial court would reverse its ruling and terminate the jury's deliberations in order to accommodate Aslinger's mistake. We therefore find that the trial court did not deny Aslinger the opportunity to make an offer of proof.

### C. *Habitual Substance Offender Sentence Enhancements*

Finally, as to this case, Aslinger claims that the trial court erred by imposing consecutive HSO enhancements to his sentences. A defendant may be "sentenced as a habitual substance offender for any substance offense by alleging . . . that the person has accumulated two (2) prior unrelated substance offense convictions." I.C. § 35-50-2-10(b).

14

An HSO enhancement adds between three and eight years to a substance offense sentence. I.C. § 35-50-2-10(f). A joint sentencing hearing was conducted for Case #127 and Case #152. During the hearing, the trial court enhanced Aslinger's thirty-two-year sentence for dealing methamphetamine by five years for the HSO adjudication and also imposed a five-and-a-half-year HSO enhancement to his one-and-a-half-year sentence for methamphetamine possession. The trial court ordered the sentences to run consecutively, totaling forty-four years.

The trial court ordered the consecutive sentences because Aslinger committed the crime in Case #152 while released on bond in Case #127. *See* I.C. § 35-50-1-2(d). The Indiana Supreme Court has established that a trial court exceeds its authority by imposing consecutive habitual offender sentences because the statute does not expressly authorize consecutive sentences. *See Starks v. State*, 523 N.E.2d 735, 736-37 (Ind. 1988). This court has also previously applied this principle to sentences imposed during the same sentencing proceeding, even if not from a single trial—as is the case with Aslinger. *See Ingram v. State*, 761 N.E.2d 883, 885-86 (Ind. Ct. App. 2002).

However, the State argues that Aslinger's consecutive sentence enhancements should be distinguished because we are dealing with the habitual *substance* offender statute—not the *general* habitual offender provision. Our supreme court has noted that the general habitual offender statute

> has historically provided for greater punishment than would ordinarily be imposed upon the substantive crime charged. The individual is subjected to the greater sentence neither for the prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime

15

committed. The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies.

*Baker v. State*, 425 N.E.2d 98, 100 (Ind. 1981) (internal citation omitted). We find this principle equally applicable to the HSO statute. The State requests that this court accord different treatment because the HSO statute "provides a more modest level of enhancement" than does the general habitual offender statute. (Appellee's Br. p. 34). Though it is tailored for a specific situation, the HSO statute serves the same purpose of enhancing the punishment for an individual whose punishments in two prior substance offenses were not sufficient to deter his or her commission of the third offense. Furthermore, like the general habitual offender statute, the HSO statute is silent as to consecutive enhancements, and we decline to diverge from the supreme court's conclusion that, in the absence of explicit permission, the trial court has no such authority. Accordingly, we find it was an abuse of discretion for the trial court to order the enhancements to run consecutively. On remand, we instruct the trial court to order the HSO enhancements be served concurrently.

## II. *Case #152*

Aslinger was convicted of dealing in methamphetamine, a Class A felony, I.C. § 35-48-4-1.1. Aslinger now challenges (A) that the trial court erred in refusing to submit his tendered instruction to the jury; and (B) that his sentence is inappropriate.

### A. *Jury Instruction*

First, Aslinger claims that the trial court abused its discretion by failing to provide the jury with his tendered instruction. In general, a trial court has complete discretion in

matters pertaining to jury instructions. *Driver v. State*, 760 N.E.2d 611, 612 (Ind. 2002). In reviewing whether a trial court has abused its discretion by refusing to include a party's jury instruction, this court considers: (1) whether the instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether any other instructions cover the same substance as the excluded instruction. *Id.*

In this case, Aslinger's charge was elevated from a Class B felony to a Class A felony solely because he was less than 1,000 feet away from Laurie Park at the time he manufactured methamphetamine. During the trial, Aslinger proposed an instruction that would permit the jury to find that his offense should not have been enhanced to a Class A felony. *See Griffin v. State*, 925 N.E.2d 344, 350 (Ind. 2010). Relying on Indiana Code section 35-48-4-16, Aslinger's proposed instruction stated:

> It is a defense for a person charged with manufacturing methamphetamine that the person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing[] complex, or a youth program center; and
> No person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within the one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.
> The defense under this section applies only to the element of the offense that requires proof that the delivery, financing of the delivery, or possession of cocaine, a narcotic drug, methamphetamine, or a controlled substance occurred in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center.

(Appellant's #152 Br. p. 12). The trial court rejected the instruction, which the State asserts was appropriate because the instruction incorrectly states the law and is inapplicable as the evidence establishes that Aslinger manufactured methamphetamine within 1,000 feet of the park for a greater time than "briefly." I.C. § 35-48-4-16(b)(1). Before addressing these

17

points, we note our finding that none of the given instructions cover the same substance as Aslinger's proposed instruction.

Aslinger contends that his instruction "track[s] the language of the statute verbatim" and is thus "a correct statement of the law." (Appellant's #152 Br. p. 6). The State, however, argues that the statutory defense "applies only to the possession, delivery, or financing the delivery of methamphetamine, and does not apply to the manufacture of methamphetamine. . . . The charging information and jury instructions made clear that Aslinger was charged only with manufacturing methamphetamine." (Appellee's Br. p. 25). Contrary to Aslinger's assertion, his instruction does not replicate the language of the statute, which does not mention "manufacturing." *See* I.C. § 35-48-4-16. Instead, the statute provides that the defense is available for "an offense . . . that *requires proof of*" delivering, financing the delivery of, or possessing methamphetamine. I.C. § 35-48-4-16(a) (emphasis added).

Although it is grounded in manufacturing, the Information precisely charges Aslinger with "dealing in methamphetamine." (Appellant's #152 App. p. 9). Per Indiana Code section 35-48-4-1.1, a conviction for dealing in methamphetamine is not contingent on establishing delivery, financing of the delivery, or possession of the drug; it is sufficient for a conviction to knowingly manufacture methamphetamine and to do so within 1,000 feet of a public park. I.C. §§ 35-48-4-1.1(a)(1)(A); -(b)(3)(B)(ii). Additionally, the statutory definition of "[m]anufacture" makes no references to delivery, financing a delivery, or possession but entails only the "production, preparation, propagation, compounding, conversion, or processing of a controlled substance" by means of extraction

18

from natural substances or chemical synthesis. I.C. § 35-48-1-18. We thus find that, because the statutory defense does not apply to Aslinger's charge, the instruction incorrectly states the law, and the trial court did not abuse its discretion in omitting it.[5]

### B. *Appropriateness of Sentence*

Lastly, Aslinger claims that his sentence for dealing methamphetamine is inappropriate. Under Indiana Appellate Rule 7(B), this court has the authority to "revise a sentence authorized by statute" if we find "the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In reviewing a sentence, we "recognize the advisory sentence is the starting point . . . as an appropriate sentence for the crime committed." *Spitler v. State*, 908 N.E.2d 694, 696 (Ind. Ct. App. 2009) (internal quotation marks omitted), *trans. denied*. To assess the appropriateness of the sentence, we review the "nature of the offense" as whether a defendant's actions satisfy the statutory criteria to sustain a conviction, and the "character of the offender" as a broad consideration of a defendant's qualities. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. For dealing in methamphetamine as a Class A felony, the sentencing statute imposes "a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4. In this case, the trial court sentenced Aslinger to thirty-two years (plus a five-year HSO enhancement) because it was Aslinger's third felony and he was on bond and probation at

---

[5] Because we find Aslinger's jury instruction to be an incorrect statement of the law, we need not address whether the evidence supports giving the instruction. *See Lamagna v. State*, 776 N.E.2d 955, 958-60 & nn. 7-9 (Ind. Ct. App. 2002).

the time of commission. Aslinger concedes that his sentence is authorized by the law but nonetheless challenges it as inappropriate.

With respect to the nature of the offense, Aslinger argues that his charge ordinarily would have been a Class B felony, which carries a sentence range of six to twenty years and an advisory sentence of ten years, but-for his being within 1,000 feet of a public park. According to Aslinger, a Class B felony sentence is more appropriate because the majority of his manufacturing process occurred on the country roads of Huntington County and not within 1,000 feet of a park. Furthermore, he contends that any manufacturing done within 1,000 feet of the park "took place in the middle of the night while the park was closed." (Appellant's #152 Br. p. 9). The nature of the offense is that Aslinger knowingly manufactured methamphetamine, a portion of which occurred next door to a public park, and, regardless of whether he had two or ten prior substance offense convictions, he satisfied the statutory requisite for an enhancement.

As to character of the offender, Aslinger argues that two prior felony "convictions are [un]related to the present offense[,]"[6] and, although his prior misdemeanors demonstrate a proclivity for habitual substance abuse, Aslinger asserts that his experimentation with drugs and alcohol began at a young age, and he "was receptive to court-ordered treatment programs." (Appellant's #152 Br. pp. 9-10). This court's consideration of a sentence's appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors

---

[6] Aslinger's prior felonies include a conviction for sexual misconduct with a minor in 2002 and failure to register as a sex offender in 2010.

20

that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Here, the record demonstrates Aslinger has a significant criminal history and an increasingly detrimental pattern of substance abuse. It is also apparent that, despite his numerous run-ins with the criminal justice system, Aslinger fails to appreciate the gravity of his offenses or the repercussions thereof: not only did he fail to satisfy the conditions of an unrelated probation, but, in the instant case, he was arrested for manufacturing methamphetamine *while released on bond* for another methamphetamine charge.

Notwithstanding the risk to his own well-being, Aslinger manufactured methamphetamine without regard for the lives of those around him. Experts testified that the volatile nature of the chemicals used in methamphetamine make it dangerous to manufacture, but Aslinger was undeterred by the threat of endangerment to his friends in the car, the other individuals at the Swan Street house, or possible innocent bystanders in the park or a nearby home. Accordingly, we find that Aslinger's aggregate sentence of thirty-seven years, which is less than the maximum sentence authorized for dealing methamphetamine as a third substance offense, is not inappropriate in light of the nature of the offense and character of the offender.

## CONCLUSION

Based on the foregoing, we conclude that, the trial court erred in admitting the evidence seized in violation of Aslinger's Fourth Amendment rights and in imposing consecutive HSO sentence enhancements; we thus reverse and remand the conviction for Case #127. We further conclude that, in Case #152, the trial court did not err in excluding

Aslinger's jury instruction, and his sentence for dealing methamphetamine is not inappropriate in light of the nature of the offense and character of the offender.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J. concurs

ROBB, J. concurs with concurring opinion

# IN THE

# COURT OF APPEALS OF INDIANA

JONATHAN R. ASLINGER,       )
                            )
    Appellant-Defendant,    )
                            )
      vs.                 )      No. 35A02-1303-CR-296
                            )
STATE OF INDIANA,           )
                            )
    Appellee-Plaintiff.     )

**ROBB, Judge, concurring**

I concur in the majority opinion. However, I write separately regarding the search and seizure in Case #127 because I believe the majority's statement of law applicable to the plain view doctrine is too broad.

The majority notes that "[u]nder the plain view doctrine, a police officer who is lawfully in a particular place may seize an item inadvertently discovered, so long as its incriminating nature is 'readily apparent.'" Slip op. at 9. Later, the majority notes that based on the Officer's testimony in this case, it is clear that the incriminating nature of the hand-rolled cigarette was not "immediately apparent or instantaneously ascertainable," citing Corwin, 962 N.E.2d at 122. Slip op. at 10. The plurality opinion in Coolidge v. New Hampshire, 403 U.S. 443, 465-70 (1971), set forth three requirements for a warrantless seizure pursuant to the plain view doctrine, including that it be "immediately apparent" that the item be evidence of a crime. In Texas v. Brown, 460 U.S. 730, 741

23

(1983), however, the Court noted "that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." Instead, "the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Id. at 741-42. Probable cause is a "flexible, common-sense standard" requiring that the facts available to an officer would warrant a man of reasonable caution in believing that an item "may be" contraband and does not require any showing that the belief is correct or even that it is more likely true than false. Id. at 742. See also State v. Figgures, 839 N.E.2d 772, 779 (Ind. Ct. App. 2005) (noting the "immediately apparent" prong does not mean that the officer must "know" that an item is contraband but only that he have probable cause to believe so; a "'practical, nontechnical' probability that incriminating evidence is involved is all that is required."), trans. denied.

I believe the majority's analysis of the "immediately apparent" requirement of the plain view doctrine could be read to impose too high a bar on an officer in general. That the incriminating nature of an object is "immediately apparent" does not mean that the officer "absolutely knows" the item is evidence of a crime. Here, the Officer testified he had been an officer for approximately fourteen years and had conducted an average of fifty drug investigations per year, and he observed a hand-rolled cigarette behind Aslinger's ear. When the Officer asked what it was, Aslinger responded that it was a "B-2 cigarette" –

some formulations of which are legal and some illegal. If the Officer had also testified that in his experience hand-rolled cigarettes are unusual and are often associated with marijuana and other illegal substances, or if he had smelled marijuana before he had already seized the cigarette and smelled it up close, that might have been sufficient to constitute probable cause and meet the "immediately apparent" prong of the plain view doctrine. However, because the Officer testified only that he saw a hand-rolled cigarette – which, as the majority notes, is not inherently illegal – even under the Texas v. Brown clarification of the "immediately apparent" prong, there was no probable cause for seizing the cigarette. I therefore concur.