## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2017, 6:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Price,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 16, 2017<br><br>Court of Appeals Case No.<br>49A05-1604-CR-910<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1408-MR-41046 |

**Crone, Judge.**

# Case Summary

Dennis Price appeals his convictions for murder and level 1 felony neglect of a dependent resulting in death, stemming from the beating death of his four-year-old son D.J. He maintains, and the State concedes, that his convictions violate his constitutional protection against double jeopardy. Price also asserts that his eighty-three-year sentence is inappropriate in light of the nature of the offense and his character. We affirm his sentence and remand for entry of his neglect of a dependent conviction as a level 6 felony.

# Facts and Procedural History

In August 2014, Price was living with his girlfriend and their three-year-old daughter D.A. in Indianapolis. Four-year-old D.J., Price's son from another relationship, had been staying at Price's home for a couple months. Because Price was serving home detention for a previous offense, he often cared for D.A. and D.J. while his girlfriend worked.

On August 23, 2014, Price was watching television when he heard a noise coming from D.A.'s bedroom. When he entered D.A.'s room, he noticed that D.J. had D.A. pinned down and was on top of her. Price became angry, grabbed D.J., and "flung him" into a corner of the room. Tr. at 292. He then "popped" D.J. in his face, lip, and side. *Id.* Later that day, Price noticed that "something was wrong with [D.J.]" and gave him half an ibuprofen tablet. *Id.* at 299. After that, Price noticed that D.J. "was acting funny … different … he wasn't acting [himself]." *Id.* at 301. He gave D.J. milk and some water mixed

with a charcoal briquette to induce vomiting. According to Price, after D.J. drank the mixture, he just went "downhill." *Id*. at 302. Price called his girlfriend, and she told him to call 911.

[4] When emergency personnel arrived, Price was outside holding D.J. in his arms. According to one of the paramedics, "[D.J.] was very ashen and gray, lifeless." *Id*. at 146. Price told the paramedics that D.J. had fallen down from ingesting too much ibuprofen.[1] While the paramedics attempted to revive D.J., they also noticed that the severe bruising on his body and face was inconsistent with falling down from a standing position. Immediately thereafter, they transported D.J. to a nearby hospital, where he was pronounced dead. The attending emergency room physician, Dr. Geoffrey Billows, observed that D.J. had multiple blunt force traumas all over his body and had signs of blood in his stomach. An autopsy revealed that in addition to massive bruising, D.J. had suffered two fractured ribs with bleeding around them, a perforation in his small intestine that caused fecal matter to seep into his abdomen, hemorrhaging under his scalp, and a skull fracture. D.J.'s cause of death was determined to be multiple blunt-force traumas.

[5] Police arrested and Mirandized Price, and during a lengthy interview, Price admitted to Detective Chris Craighill that he had "repeatedly whipped and

---

[1] Evidence technicians discovered that only two pills were missing from the bottle of ibuprofen. Dr. Geoffrey Billows later noted that this small amount of ibuprofen would not have caused D.J.'s cardiac arrest.

punched D.J. in the head and on his body that day." *Id*. at 208; State's Ex. 40. The State charged Price with murder, level 1 felony neglect of a dependent resulting in death, and level 2 felony battery resulting in the death of a child under the age of fourteen. The State subsequently amended the information to add a habitual offender count. A jury found Price guilty as charged. Price waived a jury trial for the habitual offender count, and the trial court found him to be a habitual offender, attaching the enhancement to his murder conviction. The trial court merged the battery conviction with the murder conviction and sentenced Price to concurrent terms of sixty-four years for murder and thirty-five years for neglect, with an additional nineteen years for the habitual offender count, for an aggregate sentence of eighty-three years.

[6] Price now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 –Price's conviction for level 1 felony neglect of a dependent resulting in death must be reduced and entered as level 6 felony neglect of a dependent.

[7] Price contends that the trial court erred in entering judgment on both murder and level 1 felony neglect of a dependent causing death. "Under the rules of statutory construction and common law that constitute one aspect of Indiana's double jeopardy jurisprudence, where one conviction is elevated … based on the same bodily injury that forms the basis of another conviction, the two cannot stand." *Montgomery v. State*, 21 N.E.3d 846, 865 (Ind. Ct. App. 2014) (quoting *Strong v. State*, 870 N.E.2d 442, 443 (Ind. 2007)) (quotation marks

omitted), *trans. denied* (2015). This means that Price may not be convicted and punished for an enhanced version of neglect of a dependent (level 1 felony, "resulting in death") where the enhancement is imposed for the very same harm (D.J.'s death) as another crime for which he has been convicted and punished (murder). The State concedes this point and asks that we remand for entry of Price's neglect of a dependent conviction as a level 6 felony. Price's knowing failure to seek immediate medical treatment for D.J. after he beat him is sufficient to support such a finding. Ind. Code § 35-46-1-4(a)(3); *see also*, *Mallory v. State*, 563 N.E.2d 640, 643 (Ind. Ct. App. 1990) (explaining that knowingly or intentionally "depriv[ing] the dependent of necessary support" includes actively depriving dependent of necessary medical treatment), *trans. denied* (1991). Accordingly, we remand with instructions to enter judgment of conviction for neglect of a dependent as a level 6 felony instead of as a level 1 felony and resentence him on that count. This will not affect Price's aggregate sentence, and the trial court need not conduct a new sentencing hearing on remand.

## Section 2 – Price's sentence is not inappropriate in light of the nature of the offenses and his character.[2]

[8] Price also asks that we review and revise his sentence pursuant to Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if,

---

[2] Price characterizes his sentence as manifestly unreasonable. We remind him that we have not reviewed sentences under this standard since Appellate Rule 7(B) was revised in 2003. We also remind Price's counsel that our supreme court disciplined an attorney who persisted in invoking this standard. *See In re Schlesinger*, 53 N.E.3d 417 (Ind. 2016). Because Price's sentencing argument is essentially an inappropriateness argument pursuant to Appellate Rule 7(B), we review it as such.

after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

[9] In considering the nature of Price's offenses, "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). The trial court sentenced Price

to an aggregate term of eighty-three years, comprising sixty-four years for murder, a concurrent term for neglect of a dependent, and an additional nineteen years for the habitual offender finding. The sentencing range for murder is forty-five to sixty-five years, with an advisory term of fifty-five years. Ind. Code § 35-50-2-3. The range for a habitual offender enhancement is six to twenty years for those convicted of murder. Ind. Code § 35-50-2-8(i)(1).[3]

[10] Price's violent offenses are exacerbated by the age and identity of his victim: his own four-year-old son. Also troubling, Price committed his offenses against his young son while in the presence of his young daughter. The medical evidence shows that D.J. suffered a sustained beating involving multiple blows. Emergency room physician Dr. Billows observed extensive bruising as well as signs of blood in D.J.'s stomach. The gruesome photographic exhibits depict bruising and swelling all over D.J.'s body and head. In addition to the readily observable injuries, the autopsy revealed that D.J. suffered extensive internal injuries, including broken ribs with internal bleeding in his chest cavity, a perforated intestine causing feces to seep into his abdominal cavity, hemorrhaging in his scalp, and a skull fracture. Perhaps most troubling was Price's decision not to seek medical help, which prolonged D.J.'s suffering for hours. Simply put, the extreme circumstances went well beyond the elements of the offense and militate toward a sentence above the advisory term. *See* Ind. Code § 35-42-1-1(1) ("A person who … knowingly or intentionally kills another

---

[3] The trial court attached Price's habitual offender enhancement to his murder conviction pursuant to Indiana Code Section 35-50-2-8(j).

human being … commits murder, a felony."). In fact, the circumstances include three statutory aggravating factors that would justify a sentence of life imprisonment without parole or the death penalty, i.e., Price was serving home detention for felony theft when he committed his offenses; the victim was under the age of twelve; and the offenses involved a felony battery offense (of which the jury convicted Price but which the trial court merged). Ind. Code § 35-50-2-9(b)(9), -(12), -(13)(A).

[11]  As for Price's character, we conduct our review by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Price has repeatedly demonstrated a disrespect for the law, as evidenced by his extensive criminal record beginning at age twelve and spanning seventeen years. As a juvenile, he had true findings for conduct amounting to conversion, disorderly conduct, and carrying a firearm without a license, if committed by an adult. His adult criminal history extends well beyond the two predicate felony offenses used to establish his habitual offender status and includes six felony and four misdemeanor convictions, several of which involved violence and/or weapons. *See* Appellant's App. at 150-54 (showing Price's record to include felony convictions for battery with deadly weapon, theft, auto theft, dealing in marijuana, intimidation, and criminal recklessness while armed with deadly weapon). Price also has failed to respond positively to previous lenient treatment, as evidenced by his history of probation violations. In fact, he committed the instant offenses while on home detention for felony theft.

[12] Additionally, Price violated his position of trust and care, having savagely beaten one of his children in the presence of another while babysitting them. Then, having observed indications that D.J. was in an impaired and precarious condition, Price made D.J. drink a ground-up charcoal briquette mixture to induce vomiting instead of calling for medical help. Even when he did call, Price demonstrated dishonesty, telling a variety of false stories to medical personnel, such as that D.J. fell down due to an ibuprofen overdose and that D.J. slammed his head on the door frame, as well as telling D.J.'s mother that he was in a car accident. Only after a prolonged statement to police did he finally admit that he repeatedly struck D.J. and threw him against the wall.

[13] Price asserts that his low IQ militates toward a lower sentence. He bases this argument on school records from his childhood indicating that he had an IQ of 73, a borderline mental disability. Notwithstanding, we agree with the trial court that his responses to court and law enforcement questions and his ability to concoct false accounts of his conduct indicate that he was cognizant of its wrongfulness.

[14] In short, Price has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of the offenses and his character. Consequently, we affirm his sentence.

[15] Affirmed and remanded.

Riley, J., and Altice, J., concur.