## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 15 2018, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather Dean-Barton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert D. Coleman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 15, 2018

Court of Appeals Case No.
11A01-1705-CR-934

Appeal from the Clay Superior Court

The Honorable J. Blaine Akers, Judge

Trial Court Cause No.
11D01-1605-F3-337

**Crone, Judge.**

# Case Summary

[1] Robert D. Coleman was convicted of level 3 felony conspiracy to commit armed robbery, level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"), class A misdemeanor carrying a handgun without a license, and class A misdemeanor false identity statement. He now appeals, challenging the trial court's admission of certain exhibits during his jury trial as well as the appropriateness of his aggregate twenty-five-year sentence. Finding no reversible error in the admission of the challenged exhibits and concluding that Coleman has failed to meet his burden of establishing that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] In 2016, several Indianapolis-area Kroger stores ("Kroger") were victims of pharmacy robberies perpetrated by a pair of African-American males who typically wore hats and cased the pharmacy area of each store before approaching the counter and demanding controlled substances. In May 2016, Kroger notified the management of its stores in Indianapolis and surrounding counties concerning the robberies and reminded employees about the pharmacy robbery protocols.

[3] On the afternoon of May 13, 2016, Brandi Schutter, a certified pharmacy technician at Kroger's Brazil, Indiana store, observed two African-American males lingering near the pharmacy area. Both were wearing hats, and one of them, later identified as Coleman, was peering around the end of an aisle

toward the pharmacy. Finding the men's behavior to be suspicious, Schutter notified her supervisor, and the two implemented pharmacy robbery protocols. Per the protocols, a group of Kroger employees congregated by the pharmacy area, and another employee called 911 to report a robbery in progress. Immediately thereafter, Coleman and his companion, Stacey Griffin, left the store without making a purchase.

[4] Within minutes, Clay County Sheriff's deputies arrived and apprehended the two suspects in the parking lot. When asked his identity, Coleman provided a false name. An eyewitness reported that she had seen a man fitting Coleman's description remove a handgun from his clothing and throw it in a trash can on the sidewalk outside the tanning salon by Kroger. Deputies recovered the handgun from the trash can and found it to contain a full magazine and a round in the chamber. The deputies conducted patdowns before transporting Coleman and Griffin. During the patdown of Griffin, a piece of paper fell from his pocket onto the pavement. The paper appeared to be a robbery demand note.

[5] The State charged Coleman with level 3 felony attempted armed robbery, level 3 felony conspiracy to commit armed robbery, level 4 felony unlawful possession of a firearm by an SVF, class A misdemeanor carrying a handgun without a license, and class A misdemeanor false identity statement. Coleman waived jury trial on the SVF count, and a jury convicted him as charged on the remaining counts. The trial court subsequently convicted him on the SVF

count. Per the State's request, the trial court did not enter judgment on the level 3 felony attempt count due to double jeopardy concerns.

[6] The trial court sentenced Coleman to an aggregate twenty-five-year term, with sixteen years for the conspiracy count, a consecutive nine-year term for the SVF count, and concurrent one-year terms for his two class A misdemeanor convictions. Coleman now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court did not commit reversible error in admitting the challenged surveillance video.

[7] Coleman first challenges the trial court's admission of State's Exhibit 12, surveillance video footage from the nearby Sun Factory Tanning salon. We review evidentiary rulings for an abuse of discretion resulting in prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of discretion occurs when the trial court's ruling is either clearly against the logic and effect of the facts and circumstances before it or the court misinterprets the law. *Id*. In determining whether improperly admitted evidence has prejudiced the defendant, we assess the probable impact of that evidence on the jury in light of all the other properly admitted evidence. *Id*. If independent, properly admitted evidence of guilt supports the conviction, the error is harmless. *Id*.

[8] In challenging the admission of the Sun Factory surveillance video, Coleman claims that the State failed to properly lay a foundation to authenticate the

video. The surveillance video showed Coleman discarding a handgun into a trash can on the Kroger plaza sidewalk. Eyewitness Megan Miller testified that while she was inside a nail salon nearby, she observed through the window as a man fitting Coleman's description removed a handgun from his clothing and threw it in a trash can outside the tanning salon by Kroger. Police recovered a loaded handgun from the trash can. Coleman did not object to Miller's testimony during trial, nor does he challenge it on appeal. Because the video is cumulative of Miller's eyewitness testimony, any error in its admission would be harmless. *See Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) ("The improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact."), *trans denied*. As such, we need not address the merits of Coleman's argument concerning the video.

## Section 2 – The trial court acted within its discretion in admitting the robbery demand note.

[9] Coleman also challenges the admission of State's Exhibit 15, a robbery demand note recovered during a patdown search of Griffin in the Kroger parking lot. Particularly, he asserts that the note is inadmissible on hearsay grounds under Indiana Evidence Rule 802. *See Harrison v. State*, 32 N.E.3d 240, 254 (Ind. Ct. App. 2015) (hearsay is generally inadmissible), *trans. denied*. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). However, a statement is not hearsay if it "was made by

the party's coconspirator during and in furtherance of the conspiracy." Ind. Evidence Rule 801(d)(2)(E).

> For a statement to be admissible under Rule 801(d)(2)(E), the State must prove that there is "independent evidence" of the conspiracy. This means that the State must show, by a preponderance of the evidence, (1) the existence of a conspiracy between the declarant and the party against whom the statement is offered and (2) that the statement was made in the course and in furtherance of the conspiracy.

*Roush v. State*, 875 N.E.2d 801, 808 (Ind. Ct. App. 2007) (citation omitted); *see also* Ind. Code § 35-41-5-2(a), -(b) (person conspires when, with intent to commit a felony, person agrees with another person to commit the felony, and one of the persons performs overt act in furtherance of agreement).

[10] "A statement is in furtherance of a conspiracy when the statement is 'designed to promote or facilitate achievement of the goals of the ongoing conspiracy.'" *Roush*, 875 N.E.2d at 809 (quoting *Leslie v. State*, 670 N.E.2d 898, 901 (Ind. Ct. App. 1996), *trans. denied* (1997)). Independent proof of a conspiracy "may be either direct or circumstantial and need not be strong." *Hightower v. State*, 866 N.E.2d 356, 365 (Ind. Ct. App. 2007), *trans. denied*.

[11] Here, the challenged evidence is a handwritten note that fell from Griffin's pocket during a patdown search outside Kroger. The note reads, "This is a robbery. Corporate (sic) or I will kill you. I need Tussinex[,] Percocet 10 mg[,] Roxicodonie (sic) 10 mg 30 mg." State's Ex. 15. This written statement would certainly facilitate the achievement of the goal of a conspiracy to commit armed

robbery of a pharmacy. To the extent that Coleman points to the note's phrasing in singular, not plural, first person, we note that this matter affects the weight rather than the admissibility of the evidence, as admissibility depends upon a showing of sufficient *independent* evidence of a conspiracy.

[12] As for the independent evidence supporting a conspiracy between Coleman and Griffin, surveillance video from Dollar General captured them, wearing seemingly identical hats, walking from Dollar General (at the opposite end of the strip center) toward Kroger. State's Ex. 22. Both the Dollar General video and the Kroger video showed the two always walking with one about ten to fifteen feet ahead of the other. *Id.*; State's Ex. 1. They approached and entered Kroger one right after the other. Once inside, they walked toward the pharmacy area together and remained in the pharmacy area long enough to cause concern to pharmacy technician Schutter. *See* Tr. Vol. 2 at 146 (Schutter's testimony that Coleman and Griffin were right beside each other when she saw them and appeared to be together). The pharmacy area video and photographic evidence captured Coleman peering around an end aisle toward the pharmacy, a fact which Schutter had noticed and described as suspicious. State's Exs. 1, 2. When Schutter initiated the pharmacy robbery protocols and several Kroger employees congregated by the pharmacy, the two men left the store, one after the other, without making a purchase and with Coleman discarding a handgun in a trash can outside.

[13] Simply put, the out-of-court statement was a handwritten note demanding controlled substances under a threat of death. It was found in Griffin's

possession immediately after he and Coleman, armed with a loaded handgun, had cased the Kroger pharmacy together. Sufficient independent evidence of a conspiracy supported the admission of the note. The trial court therefore acted within its discretion in admitting it under Indiana Evidence Rule 801(d)(2)(E).

## Section 3 – Coleman has failed to demonstrate that his sentence is inappropriate in light of the nature of the offenses and his character.

[14] Coleman asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather,

the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[15] In considering the nature of Coleman's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[16] Coleman was convicted of one level 3 felony, one level 4 felony, and two class A misdemeanors and was sentenced to twenty-five years. The sentencing range for a level 3 felony is three to sixteen years, with a nine-year advisory term. Ind. Code § 35-50-2-5. A level 4 felony carries a sentencing range of two to twelve years, with a six-year advisory term. Ind. Code § 35-50-2-5.5. Because his level 4 felony was a crime of violence, the trial court had the discretion to impose it consecutive to his level 3 felony without being subject to the twenty-year aggregate limit. Ind. Code § 35-50-1-2(a)(18), -(d)(4). A class A misdemeanor carries a sentence of not more than one year. Ind. Code § 35-50-3-2.

[17]     At first glance, Coleman's offenses do not appear particularly heinous in nature, yet he received the maximum term for conspiracy to commit armed robbery. As he correctly observes, no one was physically harmed by his actions that day. However, the trial court explained the nature of Coleman's offenses not only in terms of what did happen but also with respect to what could have happened but for the actions of astute members of the Kroger pharmacy staff:

> I am firmly convinced the jury got it right. More importantly, I am convinced that [the] people of Kroger got it right. The people of Kroger prevented a tragedy. There was going to be most likely, an armed robbery actually committed, and but not for, the training they had received and the email they had received and the actions that they took, they prevented something that was far worse than what did actually happen. To say that you are totally innocent and that nothing happened, the evidence does not support that Robert.

Tr. Vol. 3 at 119.

[18]     We agree with the trial court's observations. Coleman admitted that he was under the influence of Percocet when he came to Kroger with a full magazine in his handgun and a round in the chamber. Griffin's note indicated the duo's intent to kill pharmacy employees if they did not cooperate in giving them the drugs they demanded. It was the employees' implementation of pharmacy robbery protocols, not any repudiation by Coleman and Griffin, that prevented a potential blood bath. These employees had been warned of a rash of such robberies at Indianapolis stores and prevented their small-town Kroger from suffering the same fate. In this vein, we note Coleman's statements during

sentencing to the effect that he was from Indianapolis where circumstances are different. To the extent that he appeared to downplay his crimes and criminal background due to their being more commonplace in a large metropolitan area, we do not find this persuasive. The fact is, he chose to go to the small town of Brazil, locked and loaded, to perpetrate an armed robbery.

[19] Moreover, nine years of Coleman's twenty-five-year sentence are attributable to his status as an SVF and the consecutive sentencing stemming from its categorization of as a "crime of violence." Ind. Code § 35-50-1-2(a)(18). The trial court elevated his term above the six-year advisory but split the difference between the advisory and the twelve-year maximum.

[20] Similarly, Coleman's character does not militate toward a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. During sentencing, the trial court found as aggravators Coleman's criminal history and that he was on parole at the time he committed the current offenses. The presentence investigation report shows a criminal history that is both long and confusing, with some of his juvenile dispositions listed as "unknown." Appellant's App. Vol. 3 at 9. From what we can glean, Coleman's criminal conduct began at age fourteen when he committed offenses resulting in four true findings for intimidation (three of which would have been felonies if committed by an adult). At age fifteen, he had two true findings for battery, one of which would have been a felony, and one true finding for misdemeanor conversion. As a sixteen-year-old, he had a

true finding for felony residential entry, and the next year, he had true findings for misdemeanor pointing a firearm and criminal recklessness. By the time he turned eighteen, he had been charged with class B felony robbery and remanded to the Marion County Jail. He was convicted in adult court of class B felony robbery and class A misdemeanor carrying a handgun without a license. At age twenty-four, he was an SVF.

[21] Criminal record notwithstanding, Coleman asked the trial court to suspend part of his sentence due to hardship on his family. While we do not discount the negative impact of Coleman's incarceration on his son and other unrelated dependents, we note that incarceration almost always poses a degree of hardship on dependents. *Hunter*, 72 N.E.3d at 936. As such, the record must show special circumstances demonstrating that the hardship to the defendant's dependents will be undue or unusual. *Id*. at 935-36. The record here simply does not indicate such circumstances. Instead, the record indicates that despite being a parent since age fifteen, Coleman has not adjusted his criminal lifestyle to avoid hardship on his son. Even when he was given leniency in sentencing, he did not respond positively. He violated his parole, as noted by the trial court, and has a record peppered with violations of community corrections, home detention, and work release.

[22] Moreover, Coleman's use of illegal drugs does not bode well when considering his character. He is a regular marijuana user and was under the influence of Percocet when he entered Kroger with the intent of acquiring more of the same – at gunpoint. During sentencing, he and his family attributed his drug use and

criminal behavior to his brother's death in 2008. While we find this circumstance sad, we do not find it excusable. In sum, Coleman has failed to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm.

Affirmed.

Robb, J., and Bradford, J., concur.