

**FILED**

May 05 2016, 9:05 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James D. Foutch,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 5, 2016<br><br>Court of Appeals Case No.<br>48A02-1509-CR-1590<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable David A. Happe, Judge<br><br>Trial Court Cause No.<br>48C04-1404-FB-642 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, James D. Foutch (Foutch), appeals his sentence following his conviction for reckless homicide, a Class C felony, Ind. Code § 35-42-1-5 (2013); and criminal recklessness inflicting serious bodily injury, a Class D felony, I.C. 35-42-2-2(d)(1) (2013).

We affirm.

## ISSUE

Foutch raises one issue on appeal, which we restate as follows: Whether Foutch's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

On May 24, 2013, at approximately 2:00 a.m., Officer Derek McHatton (Officer McHatton) of the Edgewood Police Department was driving westbound on State Road 32 in Madison County, Indiana. When his radar indicated that an oncoming vehicle was traveling ninety-six miles per hour, he conducted a traffic stop. The driver of the speeding vehicle was Foutch, a fellow Edgewood police officer. Foutch was off duty and driving his personal vehicle, and he informed Officer McHatton that he "was just seeing how fast [his] truck would go." (Appellant's Conf. App. p. 256). Although Officer McHatton reported Foutch's excessive speed to a supervisor, no further action was taken, and Foutch never received a reprimand.

[5] Less than one year later, on April 6, 2014, around 12:30 p.m., Rebecca Sperry (Rebecca) was driving her Buick sedan home from church, heading westbound along that same road—State Road 32. Her husband, Jesse Sperry (Jesse), was riding in the passenger seat. Rebecca was nine months pregnant and was scheduled to have labor induced that evening. At some point, Rebecca, who was driving approximately fifty-seven miles per hour, checked her rearview mirror and noticed that a black SUV was approaching "incredibly fast." (Tr. p. 36). When Rebecca looked back up at her rearview mirror, the SUV was directly behind them; she realized that it was not about to pass them as she expected, and she yelled, "[O]h my gosh, he's going to hit us." (Tr. p. 37). In response, Jesse leaned over in an effort to protect his wife as the SUV slammed into the back of their car. Rebecca and Jesse "were thrown forward in the vehicle. [She] remember[s] screaming. You could hear the glass and the metal. And there was a flash of sky. There was like a jarring motion of the vehicle. And then the car abruptly stopped." (Tr. p. 37). The force of the impact had caused the Buick to leave the roadway and smash into a utility pole.

[6] Rebecca looked down to see Jesse lying across her lap; he was not moving, he was bleeding, and he did not appear to be breathing. The driver of the SUV—Foutch—exited his vehicle and ran to check on Rebecca and Jesse. Rebecca asked Foutch to confirm whether Jesse was breathing, but then she heard Jesse "gagging blood up" before he went still. (Appellant's App. p. 18). Rebecca was pinned in the vehicle, and she lost consciousness before being extracted by emergency personnel. Jesse was pronounced dead at the scene. An autopsy

revealed that he sustained a fractured skull; a laceration to his brainstem; a brain hemorrhage; multiple rib fractures with pulmonary contusions; lacerations to his liver and spleen; and fractures to his femur, tibia, and fibula in his right leg. Rebecca suffered from a lacerated spleen, a torn uterus (and a detached placenta, which cut off the baby's oxygen supply), and two broken bones in her right arm. She was air-lifted to St. Vincent Hospital in Indianapolis, where she was admitted into the intensive care unit. An emergency cesarean section was performed, and Baby Sperry was immediately transported to Riley Hospital for Children. Rebecca spent a week at St. Vincent Hospital before she was transferred to a rehabilitation hospital. Because Rebecca and her baby were recovering in separate facilities, Rebecca was not able to hold her newborn daughter until she was nine days old. Rebecca was released from the rehabilitation hospital on April 23, 2014, but she underwent therapy through June of 2014. Even after she completed therapy, Rebecca required multiple surgeries, and she continues to experience symptoms that require regular medical treatment. Baby Sperry made a full recovery and her development is now advanced for her age.

[7] Foutch was not injured as a result of the crash. During the investigation, Indiana State Trooper Bill Quakenbush (Trooper Quakenbush) observed that Foutch's speech was slurred. Trooper Quakenbush administered several sobriety tests, which Foutch failed. Foutch informed Trooper Quakenbush that he had consumed 7.5 mg of prescribed Hydrocodone as well as some non-prescribed Xanax on the morning of the accident. Trooper Quakenbush, a

certified Drug Recognition Expert, opined that Foutch was under the influence of a central nervous system depressant and was unable to safely operate a vehicle. The Crash Data Recorder from Foutch's SUV revealed that Foutch had been traveling ninety-two miles per hour when he crashed into the Sperrys, and there were no attempts to brake or swerve in order to avoid the collison.

[8] On April 10, 2014, the State filed an Information, charging Foutch with Count I, causing death when operating a vehicle with a Schedule I or II controlled substance in his blood, a Class B felony, I.C. § 9-30-5-5(b)(2) (2013); Count II, causing death when operating a vehicle while intoxicated, a Class C felony, I.C. § 9-30-5-5(a)(3); Count III, reckless homicide, a Class C felony, I.C. § 35-42-1-5 (2013); Count IV, causing serious bodily injury when operating a vehicle with a Schedule I or II controlled substance in his body, a Class D felony, I.C. § 9-30-5-4(a)(2) (2013); Count V, causing serious bodily injury when operating a vehicle while intoxicated, a Class D felony, I.C. § 9-30-5-4(a)(3) (2013); and Count VI, criminal recklessness inflicting serious bodily injury, a Class D felony, I.C. § 35-42-2-2(d)(1) (2013).

[9] At a hearing on August 20, 2015, Foutch pled guilty to Count III, reckless homicide as a Class C felony; and Count VI, criminal recklessness inflicting serious bodily injury as a Class D felony. Although Foutch did not have the benefit of a written plea agreement, the State indicated its intent to dismiss the remaining charges at the sentencing hearing. The trial court found a factual basis for Foutch's guilty pleas and took them under advisement.

[10]     On September 17, 2015, the trial court conducted a sentencing hearing. The trial court accepted Foutch's guilty pleas and entered a judgment of conviction on Counts III and VI; the remaining Counts were dismissed. As to the reckless homicide charge, the trial court sentenced Foutch to serve eight years, with seven years executed in the Indiana Department of Correction (DOC) and one year suspended to probation. For the criminal recklessness charge, the trial court imposed a sentence of three years, with one year executed in the DOC and two years suspended to probation. The trial court ordered the sentences to run consecutively, resulting in an aggregate term of eleven years, with eight years executed in the DOC and three years suspended to probation.

[11]     Foutch now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[12]     Foutch claims that his aggregate eleven-year sentence is inappropriate.[1] Here, the trial court imposed the statutory maximum sentences for a Class C and a Class D felony—eight years and three years, respectively. *See* I.C. §§ 35-50-2-6;

---

[1] Although Foutch claims that his sole issue on appeal is whether his sentence is inappropriate, he also appears to argue that the trial court abused its discretion by improperly considering several aggravating circumstances—namely, the injuries inflicted and Foutch's status as a police officer. As our court has previously stated, "inappropriate sentence and abuse of discretion claims are to be analyzed separately." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). Accordingly, because Foutch has failed to present a separate, cogent argument with the appropriate standard of review regarding the trial court's sentencing discretion, we find that he has waived the issue for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a)-(b).

-7 (2013). The trial court further ordered that Foutch execute eight years in the DOC, with the remaining three years suspended to probation.

[13] Sentencing is primarily "a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Nevertheless, although a trial court may have acted within its lawful discretion in fashioning a sentence, our court may revise the sentence "if, after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B). "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. We focus on "the length of the aggregate sentence and how it is to be served." *Id.* Our court does "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Foutch bears the burden of persuading our court that his sentence is inappropriate. *King*, 894 N.E.2d at 267.

[14] Foutch asserts that the nature of the case is "simply a run of the mill recklessness while driving which resulted in the death of one person and injury of another." (Appellant's Br. p. 11). We find that Foutch's argument gravely minimizes the severity of his actions and the consequences thereof, and we resolutely disagree with his trivialization of his conduct as merely an "inadvertent driving error[]." (Appellant's Br. p. 13). Rather, the evidence establishes that Foutch, after consuming both a prescribed Hydrocodone pill and a non-prescribed Xanax pill, and who—by his own account—was sleep-deprived, drove his SUV ninety-two miles per hour and crashed into the back of the Sperrys' Buick. The force of the impact shoved the sedan off of the road and into a utility pole. Foutch neither braked nor swerved in order to avoid the collision, and Trooper Quakenbush opined that Foutch was not fit to be safely operating a vehicle. As a result of the crash, Jesse succumbed to his injuries. Rebecca had to be extracted from the vehicle, air-lifted to a hospital in Indianapolis, subjected to an emergency cesarean section, and she required numerous surgeries, extensive hospitalization, and therapy to treat her injuries. Rebecca was unable to bond with her newborn baby for nine days. Although the odds were not in her favor given the traumatic injuries to Rebecca's uterus, Baby Sperry survived and, after treatment at Riley Hospital, is now thriving. However, she must grow up without her father.

[15] Turning to the character of the offender, we do note several redeeming qualities. First, Foutch took responsibility for his conduct by pleading guilty. Although he delayed changing his not-guilty plea until more than a year after

he was charged, Foutch spared the Sperry family from having to endure a trial. Second, during the sentencing hearing, Foutch expressed genuine remorse, stating, "I want you to know that there's not a day that goes by that I haven't thought about you and your family and what I put you guys through. And if I could change anything, if I could take [Jesse's] place, I would in a heartbeat." (Tr. p. 77). It is clear that Foutch is not a malicious person who intended the harm that he caused to this family.

[16] Nevertheless, evidence of Foutch's character also reveals that he has a history of engaging in reckless conduct behind the wheel of his vehicle, without any regard for the potential consequences. Records from the Bureau of Motor Vehicles indicate that Foutch's driver's license has been suspended eighteen times, including for the instant offense. Between 1990 and 1997, Foutch had six speeding convictions, at least four of which were for driving between fifteen and twenty miles per hour in excess of the posted speed limit. During that time, he was also convicted of driving while suspended three times, reckless driving, and driving without financial responsibility. In 2000, Foutch was charged with driving while suspended and no financial responsibility, but the disposition of that case is unknown. On at least three occasions, Foutch failed to appear in court. Despite being fined, ordered to complete community service, and

receiving a suspended sentence and probation, Foutch has continued to disregard traffic laws and the safety of fellow motorists.[2]

[17] Foutch points out that there is a significant gap between his last traffic offense and "the May 201[3] stop by Officer McHatton." (Appellant's Br. p. 10). We, however, find it significant that less than one year prior to the accident, Foutch was driving ninety-six miles per hour down the same road "just [to] see[] how fast [his] truck would go." (Appellant's Conf. App. p. 256). Foutch's proclivity for speeding and reckless driving indicates that there were likely other occasions between 1997 and 2013 where Foutch did not conform to the traffic laws but was not caught. Moreover, we find it noteworthy that, although off-duty at the time of the accident, Foutch was a police officer. Thus, he was sworn to uphold the laws and protect the citizens of his community. Instead, he acted as though the laws did not apply to him, and he endangered those he was supposed to protect.

[18] Finally, on the day of the accident, Foutch was operating his vehicle without auto insurance. The evidence presented shows that Rebecca incurred *at least* $180,753.49 in medical expenses, which does not appear to take into account the cost of Baby Sperry's medical treatment, Jesse's funeral expenses, or the loss of her vehicle. Notwithstanding the physical and emotional damage that Foutch's reckless conduct inflicted on the Sperrys, his failure to obtain the

---

[2] All of Foutch's charged driving offenses occurred prior to being hired by the Edgewood Police Department in 2003.

requisite insurance also created a significant financial burden for Rebecca. Accordingly, in light of the nature of the offense and Foutch's character, we cannot say that an aggregate eleven-year sentence, of which eight years are executed and three years are suspended, is inappropriate.

## CONCLUSION

[19] Based on the foregoing, we conclude that Foutch's sentence is not inappropriate.

[20] Affirmed.

[21] Kirsch, J. and Pyle, J. concur