## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Frank D. Drake, | February 28, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A05-1708-CR-1903 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable Frances C. Gull, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 02D04-1611-F1-16 |

**Crone, Judge.**

## Case Summary

[1] Frank D. Drake pled guilty by plea agreement to level 1 felony burglary, level 1 felony rape, and level 1 felony attempted rape and was sentenced to an aggregate eighty-year term. He now appeals his sentence, contending that it is inappropriate in light of the nature of the offenses and his character. Finding that Drake has failed to establish that his sentence is inappropriate, we affirm.

## Facts and Procedural History

[2] Drake lived with G.L.'s daughter ("Daughter") for eight years and had two children with her. Although Drake and Daughter never married, G.L. treated Drake as part of the family and often included him in family functions. In November 2016, Drake attended a family birthday party at G.L.'s home. The next night, knowing that G.L. would be staying alone, he entered her home through a kitchen window and hid in her bedroom closet waiting for her to return home. Shortly after G.L. returned home, Drake jumped out of the closet, armed with a handgun and wearing a ski mask, and warned G.L., "You're going to die, b**ch if you don't let me rape you." *See* Appellant's App. Vol. 2 at 14 (probable cause affidavit).[1] He struck her numerous times on her head and face with his fists and the butt of his handgun. He attempted to put his penis in her vagina and then shoved it into her mouth and ordered her to "suck it, or he would shoot her in the head and rape her body." *Id.* at 15.

---

[1] During Drake's guilty plea hearing, he stipulated to the accuracy of the probable cause affidavit.

Although the perpetrator's face was covered, G.L. recognized him as Drake due to his voice and pleaded, "Frank, you're with my daughter, and the kids, and I love them and you, WHY?!" *Id*. Drake said, "Shut up, b**ch, I've been waiting a long time to rape you." *Id*. G.L. went in and out of consciousness and was bleeding profusely, but eventually she extricated herself and ran outside half-clothed. A neighbor attended to her and called authorities. She was transported to the hospital and placed in intensive care for a week due to a concussion, swelling of the brain, multiple head and face lacerations requiring 157 staples, a broken nose, and severe pain. She remained hospitalized for nearly two months, followed by rehabilitation. Police confirmed Drake's identity by fingerprints left in bloodstains in G.L.'s bedroom as well as DNA evidence from G.L.'s vaginal fluids.

[3] The State charged Drake with level 1 felony burglary resulting in serious bodily injury, level 1 felony rape with deadly force and a deadly weapon, level 1 felony attempted rape, level 5 felony battery while armed with a deadly weapon, and level 5 felony battery resulting in serious bodily injury. Drake pled guilty by open plea agreement to burglary, rape, and attempted rape, all as level 1 felonies, in exchange for which the State agreed to dismiss the two battery counts.

[4] During sentencing, the State introduced photographic exhibits showing the extent of G.L.'s injuries and the bloody crime scene. The trial court identified as aggravating circumstances the extremely violent nature of Drake's offenses, his criminal history, and his failure to respond to previous opportunities at

rehabilitation. As for mitigating circumstances, the trial court identified Drake's guilty plea. The court considered and rejected Drake's proffered mitigators of remorse, acceptance of responsibility, and family support obligations. The trial court sentenced Drake to an aggregate eighty-year term, with forty years for each level 1 felony count, with the sentence for rape to be served consecutive to the sentence for burglary, and with the sentence for attempted rape to be served concurrently. Drake now appeals his sentence. Additional facts will be provided as necessary.

## Discussion and Decision

[5] Drake asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d

1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[6] In considering the nature of Drake's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[7] Drake pled guilty via plea agreement to three level 1 felonies, each carrying a sentencing range of twenty to forty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4(b). The trial court imposed consecutive forty-year terms for Drake's burglary and rape convictions and a concurrent forty-year term for his attempted rape conviction.

[8] In pronouncing sentence, the trial court expressed its consideration of the nature of Drake's offenses as follows:

I do find as a further aggravating circumstance the nature and circumstances of the crimes that you committed and the extraordinary impact on the victim and her family, and it goes far out of what any legislator would ever contemplate for a level one felony, Mr. Drake. The damage that you did initially is absolutely horrific. Your attorney – previous attorney referred to the gruesome photographs that would have been introduced. I've been a judge for 20 years, Mr. Drake, I've been an Allen County prosecutor prior to that for many years, and I was charged with the responsibility as a prosecutor for prosecuting major sex offense cases and homicides; and in all of that legal experience that I have, Mr. Drake, you rank right up there with some of the wors[t] offenses I've ever seen and one of the worst offenders I have ever seen. The extraordinary impact and the nature and circumstances of the crimes that you commit are beyond the pale, Mr. Drake …. I fully believe what the State indicates, that due to the level and nature and extensive injury, your intent was probably far worse than what you actually were charged with; and thankfully, as her father said, somebody was watching over this woman.

Tr. Vol. 2 at 44-45.

[9] Based on our review of the record, and particularly the gruesome photographs depicting the crime scene and G.L.'s injuries, we agree with the trial court's observation that Drake's offenses were among the worst of the worst. Having enjoyed G.L.'s hospitality the previous day, Drake used information he gained to discern the best time to enter her home and lie in wait. He then forcibly raped, pistol-whipped, and slugged G.L. to the point that she was unrecognizable due to extreme bleeding and swelling. G.L.'s life-threatening physical injuries forced her to spend a week in intensive care, followed by several weeks of additional hospitalization, with rehabilitation thereafter. She

continues to suffer not only the chronic physical consequences, including dizzy spells, headaches, impaired vision, and facial scarring, but also the emotional trauma and daily fear of an intruder in her home. The emotional trauma has bled throughout the entire family, due to Drake's familial ties. Simply put, G.L.'s life has been permanently damaged because of Drake's heinous actions.

[10] Similarly, Drake's character does not militate toward a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Drake's principal argument concerns his criminal history, which he believes to have been overemphasized. The twenty-six-year-old Drake correctly observes that his adult criminal record is not lengthy, with one class D felony conviction for receiving stolen property and one class C misdemeanor conviction for minor entering a tavern. His juvenile record includes true findings for marijuana possession and resisting law enforcement, an informal adjustment on a disorderly conduct count, and two incidents of unsatisfactory discharge from probation.

[11] Notwithstanding, we find Drake to be a person of uncontrolled anger and disrespect for authority, as is best illustrated by his profanity-laced outburst at sentencing. Not merely once, but numerous times, he railed at the trial court, "You just gave me 80 f**king years? …. Eighty f**king years?" Tr. Vol. 2 at 45-46. The bailiff warned him to calm down, and the trial court eventually ordered Drake removed from the courtroom.

[12] Drake's allocution statement includes self-focused assertions and attempts to deflect. For example, he claimed to take full responsibility yet, in the same breath, rationalized that he was intoxicated when he raped and beat G.L. and never would have done this in his right mind. He expressed his apologies to G.L. and her family yet went on to say,

> I did not mean for this to happen, I didn't plan it. I'll never touch alcohol again. I didn't do this, I don't remember it. I just want to live my life and I want to have a life. I'm going to prison for the rest of my life and I know it. I feel so bad.

*Id*. at 41. The trial court considered Drake's apologies and simply was unconvinced:

> You've indicated here in open court that, "I didn't mean for any of this to happen and I'm sorry." And you are sorry, and I know you're sorry for yourself that you got caught. You didn't mean for her to be sitting there, you didn't mean for that to happen.

*Id*. at 44-45. We agree with the trial court's assessment and particularly note that rather than focusing on the impact of his actions on G.L. and his children, Drake repeatedly focused on his own future.

[13] Finally, we address Drake's attempts to characterize himself as a good father with support obligations to his children that merit a reduced sentence. While we do not discount the negative financial impact of Drake's incarceration on his children, we note that incarceration almost always poses a degree of hardship on dependents. *Hunter v. State*, 72 N.E.3d 928, 936 (Ind. Ct. App. 2017), *trans.*

*denied*. As such, the record must show special circumstances demonstrating that the hardship of the father's incarceration on the defendant's dependents will be undue or unusual. *Id*. at 935-36. The record here simply does not indicate such circumstances. In fact, the unusual circumstance in this case – that Drake brutally beat and raped his children's maternal grandmother – shows Drake's complete disregard for his children's well-being. G.L.'s desperate pleas for him to stop his attack addressed his relationship with her daughter and their children. Yet, unfazed, Drake expressed his long-term desire to rape her and continued to do so and to beat her within an inch of her life. In sum, Drake has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm.

[14] Affirmed.

Robb, J., and Bradford, J., concur.