## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 13 2019, 9:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Keenan Thurman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 13, 2019

Court of Appeals Case No.
19A-CR-836

Appeal from the Marion Superior Court

The Honorable Anne Flannelly, Magistrate

Trial Court Cause No.
49G04-1809-F4-31259

**Crone, Judge.**

# Case Summary

Keenan Thurman was convicted of level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") and sentenced to seven years, with four years executed in the Indiana Department of Correction ("DOC") and three years in community corrections. He challenges the sufficiency of the evidence supporting his conviction. He also claims that his sentence is inappropriate in light of the nature of the offense and his character. We affirm his conviction and sentence.

# Facts and Procedural History

The facts most favorable to the verdict are as follows. On September 14, 2018, Thurman was driving a vehicle that he had borrowed from his longtime girlfriend, Aireyonna Calvert. Indianapolis Metropolitan Police Department Lt. John McVay saw Thurman run a stop sign, so he initiated a traffic stop. When he approached the vehicle, he observed Thurman and an adult male passenger in the front seats and a young boy in the back seat. When Thurman rolled down the driver's side window, Lt. McVay detected the odor of marijuana emanating from the vehicle. Thurman told the lieutenant that he did not have his driver's license with him, but he gave him his name. As Lt. McVay searched the BMV and National Crime Information Center databases, Officer Cory Lindley arrived on the scene and ordered the occupants out of the vehicle. Shortly thereafter, the young boy (Calvert's five-year-old nephew) was released to his mother and Calvert, who had arrived at the scene.

[3] Lt. McVay searched the vehicle and found a loaded firearm in the glove compartment and some marijuana. Officer Lindley Mirandized Thurman, and Thurman volunteered that everything in the vehicle belonged to him. Moments later, a firearm liaison officer, Eric Rosenbaum, arrived and spoke to Thurman, who told him, "The firearm is my girl's gun. I know she keeps it in there." Tr. Vol. 2 at 63. The officer began the process of collecting fingerprints and DNA from the firearm. Later testing showed no discernible fingerprints but found DNA from three people, one of whom was male. Before he was taken from the scene, Thurman told Lt. McVay, "everything you found in the vehicle, I take responsibility for." *Id*. at 44.

[4] The State charged Thurman with level 4 felony unlawful possession of a firearm by an SVF, level 5 felony carrying a handgun without a license, and level 6 felony dealing in marijuana. The level 5 and level 6 felony counts were later dismissed on the State's motion. Thurman stipulated to his 2012 conviction for class D felony criminal confinement, which served as the basis for his designation as an SVF. A jury convicted him of level 4 felony unlawful possession of a firearm by an SVF. During sentencing, the trial court identified as aggravators Thurman's criminal record, probation revocations, jail misconduct, and the fact that he was on pretrial release when he committed the current offense. The court identified as a mitigator the undue hardship that Thurman's imprisonment would place on his three children, one of whom suffers significant health problems. The court sentenced Thurman to seven years, with four years to be served in the DOC and three years to be served in

community corrections. Thurman appeals his conviction and sentence. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The evidence is sufficient to support Thurman's conviction.

Thurman challenges the sufficiency of the evidence supporting his conviction. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*. The evidence need not "overcome every reasonable hypothesis of innocence." *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016) (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)), *trans. denied*. Circumstantial evidence alone may sustain a conviction if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

To convict Thurman of unlawful possession of a firearm by an SVF, the State was required to demonstrate that he knowingly or intentionally possessed a firearm and that he is a serious violent felon. Ind. Code § 35-47-4-5(c). "A

person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Thurman stipulated to his previous conviction for criminal confinement, which the statute defines as a "serious violent felony." Ind. Code § 35-47-4-5(b)(8). He therefore is a serious violent felon, prohibited from possessing a firearm. Ind. Code §§ 35-47-4-5(a), -(c).

[7] Thurman asserts that he simply borrowed his girlfriend's vehicle and that he did not know that she had put her firearm in the glove compartment and thus did not knowingly possess it. The issue is not *ownership* of the vehicle or premises where the contraband is found but rather *possession* of it. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). A conviction for possession of contraband may rest on proof of either actual or constructive possession. *Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013). Actual possession occurs when the defendant has direct physical control over the item; constructive possession is established when the defendant has both the intent and the capability to maintain dominion and control over the contraband. *Id*. at 410. Thurman's possession of the vehicle which housed the firearm is sufficient to satisfy the capability prong. *Id*. With respect to the intent prong, we note that in circumstances such as these where Thurman did not have exclusive possession of the vehicle, the inference that he intended to maintain dominion and control over the firearm must be supported by additional circumstances implicating his knowledge of the firearm's presence. *Id*. These include:

(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id*. (quoting *Wilkerson v. State*, 918 N.E.2d 458, 462 (Ind. Ct. App. 2009)).

[8] Here, officers found the loaded firearm in the glove compartment with the grip on the far left, angled toward the driver's seat, and within Thurman's reach. Moreover, at the scene, Thurman made three incriminating statements to three different officers. After the officers found marijuana and the loaded firearm inside the vehicle and Thurman was Mirandized, Thurman made an unsolicited admission to Officer Lindley that everything in the vehicle belonged to him. He also told Lt. McVay, "everything you found in the vehicle, I take responsibility for." Tr. Vol. 2 at 44. He separately told firearm liaison Officer Rosenbaum, "The firearm is my girl's gun. I know she keeps it in there." *Id*. at 63; *see also id*. at 89-90 (testimony of Calvert, Thurman's long-term girlfriend, that she always carries her firearm with her and keeps it in her vehicle to avoid accidents inside the home). To the extent that Thurman relies on the absence of discernible fingerprints on the firearm, his and Calvert's trial testimony that he was unaware of the firearm's presence in the vehicle, and his testimony denying any admissions to officers at the scene, he invites us to reweigh evidence and reassess witness credibility, which we may not do. The evidence most favorable to the verdict is sufficient to support a reasonable inference that he

constructively possessed the firearm. Consequently, we affirm Thurman's conviction.

## Section 2 – Thurman has failed to demonstrate that his sentence is inappropriate in light of the nature of the offense and his character.

Thurman asks that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010).

In conducting our review, our principal role is to leaven the outliers, focusing on the length of the sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is

'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[11] In considering the nature of Thurman's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). Thurman was convicted of a level 4 felony, which carries a sentencing range of two to twelve years, with a six-year advisory term. Ind. Code § 35-50-2-5.5. The trial court sentenced him to seven years, comprising four years executed in the DOC and a three-year commitment to community corrections.

[12] Thurman's offense is, in part, a status offense. He stipulated to the criminal confinement conviction that served as the basis for his SVF status. As an SVF, he was prohibited from possessing a firearm. Yet, he borrowed Calvert's vehicle and drove it with a loaded handgun within his reach, a five-year-old child present in the vehicle, and an illegal drug inside. Thurman's sentence was just one year over the advisory and was only partially executed in the DOC.

The dangerous nature of his offense simply does not militate toward a shorter sentence.

[13] Nor does Thurman's character. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Thurman's criminal record includes felony convictions for narcotics possession and criminal confinement as well as four misdemeanor convictions, including invasion of privacy related to domestic violence, resisting law enforcement, and two for driving while suspended. He was on pretrial release when he was arrested on the current charge, and he has accumulated several probation revocations and jail misconduct reports. Nevertheless, the court afforded him a measure of grace in the form of serving three years of his sentence in community corrections. We believe this to be reflective of the court's consideration of Thurman's obligations as a father of three children, one with a significant health condition. While we are mindful of his employment and his child support obligations, we simply cannot say that his sentence is inappropriate, especially given his poor record of responding to more lenient sentencing options.

[14] In sum, Thurman has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of the offense and his character. Accordingly, we affirm his sentence.

Affirmed.

Baker, J., and Kirsch, J., concur.