## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEY FOR APPELLEE

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alan Keith Tarchala, | May 20, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-2604 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, | The Honorable Jane Woodward Miller, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 71D01-1905-F4-27 |

**Baker, Judge.**

[1] Alan Keith Tarchala appeals the sentence imposed by the trial court after Tarchala pleaded guilty to Level 4 felony causing death while operating a vehicle with a schedule I or II controlled substance in the blood, Level 6 felony causing serious bodily injury while operating a vehicle with a schedule I or II controlled substance in the blood, and Level 6 felony possession of methamphetamine. Tarchala argues that the sentence is inappropriate in light of the nature of the offenses and his character. Finding the sentence not inappropriate, we affirm.

## Facts

[2] On January 26, 2019, at approximately 10:00 a.m., Tarchala was driving a Jeep southbound on Bremen Highway when he hit a patch of ice that caused him to lose control of his vehicle and slide across the road into oncoming traffic, resulting in a head-on collision with a Chevrolet Spark.[1] Mary Amiel and her mother, Sherry Amiel, were in the Chevrolet Spark at the time of the crash. As a result of the collision, Sherry died and Mary was seriously injured.

[3] According to the probable cause affidavit, *see* appellant's app. vol. II p. 12-15, officers were dispatched to the scene of the collision at approximately 10:17 a.m. Upon arrival, officers saw the Jeep and the Chevrolet Spark in the northbound lane with "obvious crash damage." *Id.* at 12. Mary told the officers

---

[1] There is no indication in the record that Tarchala had been speeding or otherwise driving erratically when he lost control of his vehicle.

that she had been driving northbound when the Jeep, heading southbound in the other lane, lost control and came into her lane to hit her head on. Mary and Sherry were then transported to the hospital, where Sherry was pronounced dead.

[4] At the time of the collision, there were three occupants in the Jeep: Tarchala, a male passenger, and a female passenger. The female passenger, who stated she was Tarchala's girlfriend, told officers that she was the driver, but based on the positioning of the seats, the officers determined she was most likely the front seat passenger. Additionally, the male passenger indicated that Tarchala was the driver.

[5] A witness to the crash, who was at his residence nearby when the crash occurred, told officers that he saw someone matching the description of Tarchala throw something in a ditch near the site of the crash. The item was later discovered to be a box that contained a meth pipe and a baggie containing a "rocklike substance," *id.* at 13, which later tested positive for methamphetamine. Once at the scene of the crash and once later at the hospital, Tarchala lied to officers about his name, providing the false name of "Travis Ryan Hout," though he eventually admitted to the officers that he had been lying about his name. *Id.* Tarchala also admitted that he had been the driver of the vehicle and to using methamphetamine the previous afternoon. Officers informed Tarchala of the Indiana Complied Consent Law, after which Tarchala refused a chemical test. A search warrant to obtain blood from

Tarchala was granted, and his blood tested positive for amphetamine, methamphetamine, morphine, fentanyl, norfentayl, and acetylfentanyl.

[6] On May 1, 2019,[2] the State charged Tarchala with Count I, Level 5 felony causing death while operating a vehicle with a schedule I or II controlled substance in the blood; Count II, Level 6 felony causing serious bodily injury while operating a vehicle with a schedule I or II controlled substance in the blood; Count III, Level 6 felony possession of methamphetamine; and Count IV, Level 4 felony causing death while operating a vehicle with a schedule I or II controlled substance in the blood. Tarchala pleaded guilty as charged without a plea agreement on August 13, 2019. On October 16, 2019, the trial court merged Counts I and IV and sentenced Tarchala to ten years executed for Count IV and two years executed for each of Counts II and III, to be served consecutively, for an aggregate sentence of fourteen years. Tarchala now appeals.

# Discussion and Decision

[7] Tarchala's sole argument on appeal is that the fourteen-year sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a statutorily authorized sentence "if, after due consideration of the trial court's

---

[2] The reason for the lengthy delay between the date of the accident and the date Tarchala was charged is unclear from the record.

decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting this review, "substantial deference" must be given to the trial court's decision, "since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[8] For Level 4 felony causing death while operating a vehicle with a schedule I or II controlled substance in the blood, Tarchala faced a term of two to twelve years, with an advisory term of six years. Ind. Code § 35-50-2-5.5. The trial court imposed a term of ten years, which is significantly elevated beyond the advisory term though slightly less than the maximum. For each of Tarchala's two Level 6 felony convictions, he faced a term of six months to two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-7. The trial court imposed concurrent two-year terms, which exceeds the advisory term and nearly reaches the maximum sentence.

[9] In determining Tarchala's sentence, the trial court found as a mitigating circumstance the fact that Tarchala pleaded guilty.[3] The trial court also acknowledged Tarchala's "difficult childhood," though noted that it would be more compelling as a mitigator "were we in Juvenile Court though, rather than

---

[3] With regards to Tarchala's decision to plead guilty, the trial court stated that "[w]ere it not for that, [Tarchala would] be receiving the maximum sentence in each of these counts[.]" Tr. Vol. I p. 36.

[Tarchala] being a 34 year old man . . . who has been given multiple opportunities to deal with this addiction," both in prison and while on probation for other offenses. Tr. Vol. I p. 34. The trial court then found as aggravating circumstances the fact that Tarchala lied about his name, that he initially lied about whether he was driving,[4] and that he tried to hide and dispose of the methamphetamine at the scene of the crash. It also considered the extreme pain and trauma Mary suffered as a result of the crash, telling Tarchala that "whatever burden you think you're carrying from your childhood, you have just burdened her a thousand times over." *Id.* at 35.

[10] With respect to the nature of the offenses, we first note that Tarchala not only had methamphetamine in the car while he drove himself and others to work, but also that he attempted to hide the drugs and paraphernalia at the scene of the accident after it occurred. He did so knowing that the weather and resulting driving conditions were dangerous, as the area was experiencing the onset of a "polar vortex" at the time, *see id.* at 30-31, and he had methamphetamine in his system from using the drug the previous afternoon. Further, Tarchala lied about his name to officers twice, both at the crash scene and at the hospital, before providing his real name.

---

[4] Although the trial court stated that Tarchala lied about driving the vehicle, the record shows only that Tarchala affirmatively stated to officers that he *was*, in fact, the driver. Per the probable cause affidavit, when speaking with officers, "Tarchala indicated that he was the driver," whereas the female passenger, Tarchala's girlfriend, is the one who initially lied and stated that she had been driving because "she did not want him to get in trouble." Appellant's App. Vol. II p. 13.

[11] Curiously, however, there is no indication in the record that Tarchala was actually impaired or under the influence of controlled substances at the time of the collision, nor is there any evidence that he was speeding or otherwise driving irresponsibly. *See, e.g.*, *Foutch v. State*, 53 N.E.3d 577, 581 (Ind. Ct. App. 2016) (affirming a sentence under 7(B) where defendant took hydrocodone and Xanax immediately before operating and crashing a vehicle; defendant was driving ninety-two miles per hour, officers stated that he was "not fit to be safely operating a vehicle," and defendant himself admitted to being sleep-deprived). Here, Tarchala admitted to officers that he had used methamphetamine the day before the crash, and by pleading guilty, he conceded that he had controlled substances in his blood—but there is no additional evidence showing impairment from those drugs at the time of the crash itself.

[12] But whatever the immediate cause of the collision, we do acknowledge the especially severe result of the accident. Mary suffered a broken ankle, broken wrist, and fractured elbow; there were "bones sticking out of [her] ankle" and her arms and legs were covered with bruises; and all of her sustained injuries left her "screaming out in pain" from "the most severe pain [she had] ever experienced." Tr. Vol. I. p. 22. And during all of that, Mary was left wondering whether her mother was alright, only to later be told by medics that her mother had died from the crash. Mary remained at the hospital for eight weeks, during which she underwent twelve surgeries; after her release, she was confined to a wheelchair for a month and could not work or care for herself. Despite ongoing

therapy and medical care, Mary still is recovering and experiences pain and limited movement in her ankle and foot.

[13] With respect to Tarchala's character, Tarchala has an extensive criminal record, including an adult history of four felony and three misdemeanor convictions for receiving stolen property, resisting law enforcement, public intoxication, operating a vehicle while intoxicated, burglary, residential entry, and theft. As a juvenile, Tarchala was arrested several times, with his first adjudication at age fifteen. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that a record of arrests may be considered "as a poor reflection on the defendant's character" in 7(B) sentence review). Tarchala has twice had his probation for other convictions revoked and has also been declared delinquent from parole. At the time of the present offenses, Tarchala was on parole, had an active parole warrant, and was driving with a suspended license. Lastly, as the trial court noted, Tarchala has failed to take advantage of countless opportunities provided to him over the years by the justice system to work towards overcoming his drug use and addiction.

[14] In sum, we do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses and Tarchala's character. We do, however, emphasize again that the record is lacking in some regards with respect to the nature of the offenses. But while we may have imposed a different sentence, in conducting our review under Rule 7(B) "we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence was inappropriate."

*Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013) (emphasis in original) (internal quotations omitted).

[15] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.